## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LORI RAVENSCROFT GEARE and ROBERT J. CASEY, II, Derivatively for the Benefit of HOSPIRA, INC., <br><br>         Plaintiffs, <br><br>    v. <br><br> CHRISTOPHER B. BEGLEY, F. MICHAEL BALL, THOMAS E. WERNER, IRVING W. BAILEY, II, JACQUE J. SOKOLOV, BARBARA L. BOWLES, ROGER W. HALE, JOHN C. STALEY, CONNIE R. CURRAN, HEINO VON PRONDZYNSKI, MARK F. WHEELER, TERRENCE C. KEARNEY, RONALD A. MATRICARIA, and BRIAN J. SMITH, <br><br>         Defendants, <br><br>    –and– <br><br> HOSPIRA, INC., a Delaware corporation, <br><br>         Nominal Defendant. | Case No.  11-cv-09074 (JJT) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNCONTESTED MOTION FOR FINAL APPROVAL OF SETTLEMENT,
## <u>AWARD OF ATTORNEYS' FEES AND EXPENSES, AND INCENTIVE AWARDS</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT BACKGROUND ...........................................................................2

     A.      Overview of the Litigation.......................................................................2

     B.      Preliminary Approval and Notice to Shareholders ..................................4

III.   THE SETTLEMENT SHOULD BE FINALLY APPROVED ..........................4

     A.      Legal Standard .........................................................................................4

          1.       Each of the *Isby* Factors Weighs in Favor of Final Approval.....................5

               a.       The Risks of Establishing Liability................................5

               b.       The Complexity of Further Litigation Favors Final Approval ........................................................................7

               c.       Experienced Counsel Favor Approval .............................8

               d.       The Stage of Proceedings Favors Final Approval of Settlement ........................................................................8

     B.      The Proposed Settlement Is Presumed Fair and Reasonable Because It Is a Product of Arm's-Length Negotiations ................................................10

     C.      The Settlement Provides a Substantial Benefit to Hospira ....................10

     D.      The Court-Approved Notice Was Adequate and Satisfies Due Process................12

IV.   THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED ..................................................................................................13

V.    THE INCENTIVE AWARD AMOUNT SHOULD BE APPROVED ............15

VI.   CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ............................................10

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................7

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ............................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................13

*Boggess v. Hogan*,
410 F. Supp. 433 (N.D. Ill. 1975) ............................................8

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................13, 14

*Freeman v. Berge*,
68 F. App'x 738 (7th Cir. 2003) ............................................5

*Gen. Electric Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ............................................5

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................13

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302 (SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ............................................5

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ............................................6

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................10

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ............................................6

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12
Litig.*,
477 F. Supp. 2d 612 (E.D. La. 2006) ............................................10

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................8

*In re Sw. Airlines Voucher Litig.*,
    No 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .............................5

*In re Train Derailment Near Amite La.*,
    No. Civ. A. MDL No. 1531, 2006 WL 1561470 (E.D. La. May 24, 2006) ....................10

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .............................................................4, 5, 7, 9

*Lambrecht v. Taurel*,
    No. 1:08-cv-68-WTL-TAB, 2010 WL 2985946 (S.D. Ind. June 8, 2010) .................10, 11

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ........................................................................11

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987) ........................................................................10

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)........................................................................13

*Sauby v. City of Fargo*,
    No. 3:07-cv-10, 2009 WL 2168942 (D.N.D. July 16, 2009) ............................................15

*Smith v. Dominion Bridge Corp.*,
    No. 96-7580, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007)................................14

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*,
    447 F.2d 647 (7th Cir. 1971) ........................................................................8

**RULES**

Fed. R. Civ. P. 23.1(c). ........................................................................1, 4

# I. INTRODUCTION

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure ("Rule 23.1"), plaintiffs Lori Ravenscroft Geare and Robert J. Casey, II ("Illinois Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of final approval of the proposed settlement of the Illinois Action (the "Settlement") as set forth in the Stipulation,[1] which was preliminarily approved by the Court by Order of November 14, 2014 (the "Preliminary Approval Order"). Dkt. #79. Illinois Plaintiffs also respectfully request final approval of the Fee and Expense Amount, including the Incentive Award Amount.

As set forth in the Stipulation, and as explained in the accompanying declarations of George C. Aguilar ("Aguilar Decl.") and Scott R. Shepherd ("Shepherd Decl."), the Settlement achieves significant measures designed to strengthen Hospira's corporate governance and Board of Directors' (the "Board") oversight, and addresses allegations made in the Actions about alleged misconduct that resulted in compliance issues with U.S. Food and Drug Administration ("FDA") regulations and hundreds of millions of dollars in remediation costs (the "Commitments"). The Commitments will, among other things: (i) significantly strengthen Hospira's internal controls over the Company's quality and compliance; (ii) provide numerous insider trading controls; (iii) improve Board training protocols; and (iv) require increased Board oversight over the Company's authorized stock repurchases. *See* Stipulation, Ex. A. Further, the Parties acknowledge the prosecution of the Actions was a meaningful factor in certain additional investments in quality and compliance, and changes in Board structure that the Company has recently implemented. *Id.*

The proposed Settlement is the outcome of an extensive factual and legal investigation by

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings and/or definitions as set forth in the Stipulation of Settlement dated November 3, 2014 (the "Stipulation"). Dkt. #74.

Plaintiffs, (including the retention and consultation of an industry expert) and hard-fought litigation for more than two years. The Commitments, which will help Hospira significantly, resulted from arm's-length negotiations conducted by highly experienced counsel over a five-month period. The Settlement merits approval, as it provides excellent benefits, while eliminating the uncertainty and expense of continued litigation.

## II.   RELEVANT BACKGROUND[2]

### A.   Overview of the Litigation

Illinois Plaintiffs' individual shareholder derivative actions were filed in December 2011. Aguilar Decl., ¶4. The cases were consolidated ("Action" or "Illinois Action"), and Illinois Plaintiffs filed their amended complaint on May 1, 2013 (the "Illinois Complaint"), alleging that certain of the Individual Defendants breached their fiduciary duties by, among other things: (1) recklessly approving and pursuing an improper plan to boost corporate revenues at the expense of legal compliance; (2) dragging their feet on remediation as FDA violations piled up; (3) authorizing false statements to be issued that effective remedial actions were underway; (4) allowing insiders to improperly sell their shares; and (5) authorizing large stock repurchases while consciously in the dark as to the extent of Hospira's non-compliance (the stock soon thereafter declined significantly). *Id.*, ¶¶4-6. In crafting their complaint, Illinois Plaintiffs drew on the advice of an FDA expert, as well as reviewed substantial materials obtained from the FDA via a FOIA request, and otherwise. Defendants' motion to dismiss the Illinois Complaint was fully briefed and submitted to the Court. *Id.*, ¶24.

Following informal settlement discussions, which included Defendants' production of approximately 1,000 pages of confidential documents, and review and comment on those

---

[2] The facts supplied in Section II are discussed in greater detail in the Aguilar Decl., ¶¶4-13 and Shepherd Decl., ¶¶3-8 (Exhibit 5 to the Aguilar Decl.).

documents from Illinois Plaintiffs, Illinois Plaintiffs and Defendants (the "Illinois Parties") agreed to participate in and scheduled a mediation session with an experienced mediator, Jed D. Melnick (the "Mediator") on May 23, 2014.  *Id.*, ¶¶8-9.  In advance of the mediation, the Illinois Parties submitted detailed mediation briefs.  *Id.*, ¶9.  The mediation session on May 23 was fruitful, with counsel for the Illinois Parties negotiating substantial components of the Settlement, although significant issues remained open.  *Id.*, ¶¶9-10; Declaration of Mediator Jed D. Melnick in Support of Plaintiffs' Uncontested Motion for Final Approval of Settlement, Award of Attorneys' Fees and Expenses, and Incentive Awards ("Melnick Decl."), ¶9 (Exhibit 6 to the Aguilar Decl.).  Following the mediation session and for the next several months, the Illinois Parties continued arm's-length settlement negotiations, facilitated by the Mediator.  Aguilar Decl., ¶9; Melnick Decl., ¶9.

Around this time, the Delaware Plaintiff, following a review of documents produced in response to an inspection demand, filed the Delaware Action on July 22, 2014.  Shepherd Decl., ¶6.  Shortly thereafter, counsel for the Delaware Plaintiff participated in the ongoing settlement discussions in the Illinois Action and negotiated certain revisions to the proposed terms in the Settlement.  *Id.*, ¶¶9-10.[3]

After reaching an agreement in principle on the substantive terms of a settlement, the Parties engaged in further arm's-length negotiations through the Mediator concerning the amount of an attorneys' fee and expense award.  Aguilar Decl., ¶10.  Despite extensive negotiation, the Parties were unable to reach an agreement but decided to submit the matter, after further briefing, to the Mediator for a binding determination.  *Id.*; Melnick Decl., ¶14.  The proposed Fee and Expense Amount, and the Incentive Award Amount, arrived upon reflect the Mediator's

---

[3] The Delaware Parties have informed the Delaware Court of the Settlement and submitted the Stipulation and filings in this Action to the Delaware Court.  *See* Shepherd Decl., ¶11.

determination as to a fair amount for each Plaintiff group.  *Id*.; Melnick Decl., ¶¶15-16.

### B. Preliminary Approval and Notice to Shareholders

On November 14, 2014, the Court granted preliminary approval of the Settlement, authorized the Notice of Pendency and Proposed Settlement of Shareholder Derivative Actions (the "Notice"), and set January 23, 2015, as the hearing date for final approval of the Settlement. *See* Preliminary Approval Order, ¶¶2-5.  Pursuant to the terms of the Preliminary Approval Order, the Notice was furnished to the U.S. Securities and Exchange Commission ("SEC") via Form 8-K and posted, along with the Stipulation, on the websites of Hospira, Robbins Arroyo LLP, and Schubert Jonckheer & Kolbe LLP.  Aguilar Decl., ¶12.

## III. THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A. Legal Standard

Under Rule 23.1(c), a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).  In determining whether the proposed Settlement warrants final approval, the Court must limit its inquiry to "the consideration of whether the proposed [S]ettlement is lawful, fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).[4]  This inquiry requires the Court not to "focus on individual components of settlements, but rather view them in their entirety in evaluating their fairness."  *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  Four factors guide the Court's analysis: (1) "the strength of plaintiffs' case compared to the amount of defendants' settlement offer"; (2) the "complexity, length and expense of the litigation"; (3) "the opinion of competent counsel"; and (4) "the stage of the proceedings and the amount of

---

[4] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

discovery completed." *Isby*, 75 F.3d at 1199.[5]  As discussed below, the application of these factors supports final approval.

1.    Each of the *Isby* Factors Weighs in Favor of Final Approval

a.    The Risks of Establishing Liability

The first factor to consider is a comparative evaluation of the Actions to the results achieved by Settlement. *Isby*, 75 F.3d at 1199.  "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Sw. Airlines Voucher Litig.*, No 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013).

The Action seeks redress for the alleged failure of the Individual Defendants to honor the fiduciary duties imposed upon them as directors and officers of Hospira.  The Action centers upon the Individual Defendants' alleged pursuit of an improper plan to boost corporate revenues and profits, at the expense of legal compliance.  Aguilar Decl., ¶5.  The Individual Defendants first ignored the Company's compliance problems and then, as FDA violations piled up, deliberately slowed the required response. *Id.*  Additionally, during this period, the Individual Defendants authorized or permitted false statements, including that effective remedial actions were underway, to be issued. *Id.*  Further, the Individual Defendants allowed insiders to dump their shares on the unsuspecting public and improperly authorized large stock repurchases. *Id.*

Although Illinois Plaintiffs believe they have strong claims against the Individual Defendants, they are mindful that derivative actions are notoriously complex and expensive to prosecute. *See, e.g.*, *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (approving derivative settlement and noting that

---

[5] *See also Freeman v. Berge*, 68 F. App'x 738, 742-743 (7th Cir. 2003); *Gen. Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

"shareholder derivative actions are 'notoriously difficult and unpredictable'").[6]  Indeed, as in every complex case of this kind, Illinois Plaintiffs face some significant obstacles to recovery. As an initial matter, at the time the proposed Settlement was agreed upon, Defendants' motion to dismiss—asserting that Illinois Plaintiffs had not satisfied Delaware's stringent "demand requirement"—was still pending.  While Illinois Plaintiffs believe that they adequately pled demand futility, there is a substantial risk that the Court could rule otherwise (particularly given Rule 23.1's heightened pleading requirements).

Moreover, even if the Court denied the pending motion to dismiss, the defenses likely to be raised by the Individual Defendants would have added to the litigation's unpredictability.  For example, Defendants would likely have compartmentalized Illinois Plaintiffs' claims as being "*Caremark*" claims seeking recovery for the Individual Defendants' failure to supervise third parties.  This theory—"possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment"—requires a plaintiff to prove "a sustained or systematic failure of the board to exercise oversight."  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967, 971 (Del. Ch. 1996).  Indeed, Defendants made this argument in their motion to dismiss.  *See* Dkt. #53 at 23-24 n.7.  In addition, damages claims under Delaware law require proof of the defendants' "bad faith," a state of mind never easily established. Thus, there exists a significant possibility that Defendants could have prevailed on summary judgment or at trial by rebutting the contention that the Board's awareness of the Company's failure to comply with applicable law had risen to the level of a "systematic failure," or that their conduct reflected their bad faith.

---

[6] In evaluating the strengths and weaknesses of the Illinois Action on the merits and the defenses raised, the Court should take special care not to conduct something akin to a trial on the merits.  *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010)  ("When analyzing whether a proposed settlement is fair, reasonable, and adequate, courts 'should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'").

Balanced against this uncertainty, this proposed Settlement achieves the major objectives of the Action. Aguilar Decl., ¶18. There will be substantial and material benefits to the Company and its shareholders from prospective changes resulting from the Commitments. *Id*. Plaintiffs were ultimately responsible for obtaining commitments to improve or maintain, among other areas, Hospira's quality and compliance controls, the independence and competence of its Board and management, and insider trading and repurchase oversight. As noted below and in the motion for preliminary approval, these Commitments were specifically designed by Plaintiffs to remedy alleged internal governance failures that gave rise to the Action, as they strengthen Hospira's corporate governance practices in a real and practical way. The Parties further acknowledge the prosecution of the Actions as a meaningful factor in Hospira's additional investments in quality and compliance, and in changes in Board structure that the Company has recently implemented. These include the hiring of new management, employees, and the installation of new quality, testing, and inspection laboratory improvements. The Settlement thus obtains most of the Action's objectives without the risk of continued litigation.

### b. The Complexity of Further Litigation Favors Final Approval

The second factor to consider in evaluating the reasonableness of a proposed settlement looks to the future of a case absent the settlement of claims. *Isby*, 75 F.3d at 1199. There is much that remains to be done in order to successfully recover for Hospira absent the proposed Settlement. A ruling on the pending motion to dismiss in the Illinois Action must be reached and Illinois Plaintiffs and Defendants must prosecute the Illinois Action through merits discovery, expert discovery, summary judgment, trial, and appeal. These efforts would no doubt entail intensive, lengthy, and costly proceedings for both sides. *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012) (where court had "ample evidence with which to evaluate the litigation's expense" and the "path to trial will be

quite costly," this factor weighed in favor of approval of the settlement).

Likewise, the investment of additional time and expense does not assure that Illinois Plaintiffs would have achieved a better result for the Company and its shareholders. If the case were fully litigated, the Company may have received substantially less, or nothing at all. "[T]he odds of winning [a] derivative lawsuit [are] extremely small." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). With a great amount of work to be done and no assurance of ultimate success, the significant results flowing from the proposed Settlement provide a strong justification for its approval.

### c. Experienced Counsel Favor Approval

The third factor routinely considered when evaluating the reasonableness of a proposed settlement is the view of counsel, as well as shareholder reaction to the proposed settlement. *See United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975) (noting support from "counsel experienced in similar litigation"). Plaintiffs' Counsel, who believes this Settlement offers an excellent result for Hospira and its shareholders, are eminently qualified to offer such an opinion through their extensive experience in prosecuting class and derivative litigation. Aguilar Decl., ¶31 & Exs. 1-4. It is not just Plaintiffs' Counsel who support this Settlement. Defendants are represented by an experienced and prestigious corporate defense law firm which is also well-versed in breach of fiduciary duty litigation. *Id.*, ¶22. Whereas this is an uncontested motion for final approval, all counsel involved are of the view that, in their best judgment, the proposed Settlement is fair, reasonable, and adequate.

### d. The Stage of Proceedings Favors Final Approval of Settlement

The evaluation of a proposed settlement must also consider at what stage of the litigation settlement is reached and whether the parties were sufficiently informed about the facts to permit

a meaningful resolution of the litigation. *Isby*, 75 F.3d at 1199. Although this case settled prior to resolution of Defendants' motion to dismiss, all Parties to the proposed Settlement had extensive knowledge of the facts and a more than sufficient basis on which to evaluate both the merits of the claims and defenses in this Action, as well as any proposed settlement terms.

Here, the Settlement was negotiated only after Illinois Plaintiffs conducted a diligent investigation into Plaintiffs' factual allegations and legal claims, and after posturing the case in the best possible stage for efficient resolution of the claims, including: (1) reviewing Hospira's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company; (2) reviewing media reports about the Company; (3) researching the applicable law with respect to the claims alleged in the Actions and the potential defenses thereto; (4) preparing and filing the complaints in the Actions; (5) obtaining and reviewing highly technical documents via a FOIA request to the FDA; (6) hiring and conferring with an industry expert to advise on the FOIA documents and in the preparation and drafting of the Illinois Complaint; (7) conducting extensive damages analyses; (8) drafting an opposition to Defendants' motion to dismiss; (9) participating in informal conferences with Defendants' counsel regarding the specific facts of the cases, the perceived strengths and weaknesses of the cases, and other issues in an effort to facilitate negotiations and fact gathering; (10) reviewing approximately 1,000 pages of confidential documents in connection with settlement discussions; (11) proposing extensive corporate commitments for Defendants; and (12) negotiating this Settlement with Defendants, including drafting and submitting extensive mediation briefs. Aguilar Decl., ¶24.

Ultimately, "[t]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of

settling the case on the terms proposed or continuing to litigate it." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 477 F. Supp. 2d 612, 620-21 (E.D. La. 2006) (citing *In re Train Derailment Near Amite La.*, No. Civ. A. MDL No. 1531, 2006 WL 1561470, at *22 (E.D. La. May 24, 2006)).[7] Accordingly, Illinois Plaintiffs had ample information to evaluate the strengths and weaknesses of their claims.

**B.      The Proposed Settlement Is Presumed Fair and Reasonable Because It Is a Product of Arm's-Length Negotiations**

The proposed Settlement further merits approval because it has been the subject of a lengthy mediation and negotiation process that was conducted at arm's-length. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) (emphasizing the importance of a negotiation process free of collusion). The parties to the Illinois Action engaged in an extensive in-person mediation session before the Mediator on May 23, 2014, to determine if there was any common ground upon which a settlement could be reached. Melnick Decl., ¶¶3, 9. Following the mediation session and for the next several months, Illinois Plaintiffs and Defendants continued arm's-length settlement negotiations, facilitated by the Mediator. *Id.*, ¶9. Without question, therefore, the Settlement cannot be viewed as collusive or the product of anything but the fully negotiated and hard fought Settlement that it is.

**C.      The Settlement Provides a Substantial Benefit to Hospira**

Because this is a derivative action, the Court must consider the extent of the benefit conferred on Hospira by the proposed Settlement. *See Lambrecht v. Taurel*, No. 1:08-cv-68-WTL-TAB, 2010 WL 2985946, at *3 (S.D. Ind. June 8, 2010) (holding that the terms of the

---

[7] *See also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 941 (N.D. Ill. 2011) ("Although formal discovery had not taken place, that fact alone did not preclude approval of the Settlement in light of the significant amount of informal discovery that the parties had conducted."); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (discovery sufficient to "provide the parties with information about their respective litigation positions" is enough for settlement approval).

shareholder derivative settlement were fair, reasonable, and adequate after having "considered the substantial benefits the Settlement provides [the company]").  Importantly, the benefits afforded by a settlement in a derivative action need not be monetary: "a settlement may fairly, reasonably, and adequately serve the best interest of a corporation … even though no direct monetary benefits are paid by the defendants to the corporation."  *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983).  In cases involving alleged misconduct – including a failure of board oversight – by companies in the pharmaceutical industry (like here), courts have routinely held that enhanced corporate governance measures confer a "substantial benefit" on a corporation.  *Lambrecht*, 2010 WL 2985946, at *3 (approving settlement with corporate governance component only, and stating that "the Court has considered the substantial benefits the Settlement provides [the company], taking into account among other factors the risks of establishing liability and proving damages, the complexity, expense, and likely duration of the litigation, and the stage of the proceedings").

Here, the Commitments include changes in corporate oversight directly addressing the Company's quality and safety procedures, related FDA compliance, and policies regarding insider trading and stock repurchases.  Stipulation, Ex. A.  The Commitments address the alleged oversight lapses by increasing direct, formal executive oversight of the Company's quality and FDA compliance efforts, providing for more rigorous management and oversight of the internal quality audit function, and enhancing the insider trading and stock repurchase policies.  *Id*. Additionally, the Commitments also go further and require broad structural changes that will materially improve the competence and effectiveness of the Board's oversight of Hospira's operations.  *Id*.  As stated above, the prosecution of the Actions was a meaningful factor in certain additional investments in quality and compliance and changes in Board structure that the Company has recently implemented.  Accordingly, the Commitments and other improvements,

which will be maintained for no less than three years, confer real and substantial value on Hospira and its shareholders.  *See* Stipulation, ¶2.1; Aguilar Decl., ¶27.

> **D.      The Court-Approved Notice Was Adequate and Satisfies Due Process**

The Preliminary Approval Order requires notice of the proposed Settlement to be made available to Hospira shareholders through: (i) furnishing the Notice and Stipulation to the SEC on Form 8-K; (ii) posting the Notice and Stipulation on Hospira's website; and (iii) posting the Notice and Stipulation on Plaintiffs' Counsel's websites at Robbins Arroyo LLP and Schubert Jonckheer & Kolbe LLP.  *See* Preliminary Approval Order, ¶5.  Hospira and Plaintiffs' Counsel have taken all these steps, and will file an affidavit to that effect fourteen days prior to the Settlement Hearing.  *See id.*, ¶6.

This Court has already ruled that "the form and substance of the Notice" as well as the manner disseminated "shall constitute sufficient notice under Federal Rule of Civil Procedure 23.1(c)."  *Id.*, ¶4.  Further, the process employed was reasonably calculated to apprise shareholders of the Settlement, as the Notice informed shareholders of: (1) the essential terms of the Settlement; (2) the date and location of the final Settlement Hearing; (3) the primary contentions of the Parties and an explanation of the Actions; (4) the amount of the request for attorneys' fees and expenses and Plaintiffs' Incentive Award Amount; (5) the procedure by which shareholders can object to the proposed Settlement and/or the request for attorneys' fees and expenses; and (6) the requirements for appearing at the Settlement Hearing.  The Notice is more than sufficient to inform interested parties of the proposed Settlement and of their opportunity to present any objections.

## IV. THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

In recognition of the material benefits conferred upon Hospira and its shareholders, and subject to the Court's approval, Defendants will cause Hospira or its insurance carriers to pay Plaintiffs' counsel attorneys' fees and expenses in the amount of $2.3 million to Illinois Plaintiffs' counsel and $330,000 to Delaware Plaintiff's counsel (the "Fee and Expense Amount"). *See* Stipulation, ¶¶4.1-4.2. Counsel who prosecute and settle shareholder derivative actions that confer benefits on corporations are entitled to an award of attorneys' fees and costs. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) (an award of fees may be justified "regardless of whether the benefit is pecuniary in nature"). Here, there is no question that the Commitments obtained confer material and long-lasting benefits upon Hospira. *See supra* section III.C.[8]

Moreover, courts encourage litigants to resolve fee issues by agreement. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, … litigants will settle the amount of a fee."). A negotiated fee is entitled to substantial deference. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005). Here, the agreed-upon Fee and Expense Amount is the product of extensive arm's-length negotiations between highly skilled and experienced counsel. *See supra* sections II.A, III.B; *see also* Aguilar Decl., ¶¶25, 31, & Exs. 1-4. Importantly, the negotiation of the Fee and Expense Amount was conducted separately and following agreement of the substantive terms of the Settlement. *See* Melnick Decl., ¶11. These negotiations occurred directly between the Company's counsel and insurer and Plaintiffs' Counsel, with the substantial

---

[8] Courts recognize the value of such measures and have awarded attorneys' fees in shareholder derivative cases that far exceed those being sought here and where the settlements were for corporate governance measures only. *See, e.g., In re Abbott-Depakote S'holder Derivative Litig.*, No. 1:11-cv-08114, slip op. at 7 (N.D. Ill. May 22, 2014) (awarding $9.9 million in attorneys' fees and expenses); *Warner v. Lesar*, Cause No. 2011-09567, slip op. at 10 (Tex. Dist. Ct.-Harris Cnty. Oct. 1, 2012) (awarding $7.75 million in attorneys' fees) (Exhibits 11 & 12 to the Aguilar Decl.).

aid of the Mediator. *Id.*, ¶¶12-13. The Parties negotiated the Fee and Expense Amount at arm's-length based upon their respective valuation of the benefits conferred upon Hospira and assessment of the amount that would fairly compensate Plaintiffs' Counsel for the risks and efforts undertaken in commencing and prosecuting the Actions on a contingency basis and the results achieved for Hospira. *See* Melnick Decl., ¶13; Aguilar Decl., ¶31.

The Parties agreed to submit the matter, after additional briefing, for the Mediator's binding determination. Melnick Decl., ¶¶13-14. The Mediator subsequently determined the Fee and Expense Amount, including Incentive Award Amount, subject to Court approval, and the Parties accepted the Mediator's determination. *Id.*, ¶15. Ultimately, the fee negotiation and final determination was based on a knowledgeable analysis of the appropriate fee for the work done and the benefits achieved. *Id.*, ¶16. The end result of the negotiation reflects both sides' experience, including the Mediator's experience, as to what is appropriate and should therefore be approved by the Court. *See Id.*, ¶¶15-16; Aguilar Decl., ¶32.

The reasonableness of the Fee and Expense Amount is further supported under a lodestar analysis. In representative actions, courts will sometimes look to the requesting counsel's lodestar and the multiplier that will result if a requested fee is awarded as a "cross-check." *Smith v. Dominion Bridge Corp.*, No. 96-7580, 2007 WL 1101272, at *7 (E.D. Pa. Apr. 11, 2007). "In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation." *Cohn*, 375 F. Supp. 2d at 862 (collecting cases). Here, counsel who represented Illinois Plaintiffs expended 3,071.52 hours prosecuting this litigation, for a total lodestar of $1,464,023.75. Aguilar Decl., ¶34. The Delaware Plaintiff's counsel expended 625.70 hours prosecuting this litigation, for a total lodestar of $381,156. Shepherd Decl., ¶13. Combined expenses total a reasonable $67,652.42. The resultant multipliers of 1.53 and 0.84, respectively, are well within the range regularly approved by courts in this type of

litigation and further demonstrate that the requested Fee and Expense Amount is reasonable and should be approved in full.

## V.     THE INCENTIVE AWARD AMOUNT SHOULD BE APPROVED

In recognition of Plaintiffs' efforts on behalf of Hospira, the Stipulation provides for an award to each Plaintiff in the amount of $3,000, as determined by the Mediator, to be paid from the Fee and Expense Amount.  *See* Stipulation, ¶4.3; Melnick Decl., ¶15; Aguilar Decl., ¶¶10, 32, 40.  The modest Incentive Award Amount should therefore be approved.  *Sauby v. City of Fargo*, No. 3:07-cv-10, 2009 WL 2168942, at *1 (D.N.D. July 16, 2009) (upholding awards of $5,000 and $10,000 because, among other things, "[i]ncentive awards are not intended to 'compensate' plaintiffs, but instead serve to encourage people with legitimate claims to pursue the action").

## VI.    CONCLUSION

For all of the foregoing reasons, the Court should grant final approval of the Settlement, approve the requested Fee and Expense Amount, including the Incentive Award Amount, and enter the Judgment submitted herewith.

Dated: December 31, 2014                    Respectfully submitted,

**ROBBINS ARROYO LLP**

By:    */s/ George C. Aguilar*

George C. Aguilar
Brian J. Robbins
Ashley R. Palmer
Joan M. Rabutaso
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsarroyo.com
brobbins@robbinsarroyo.com

apalmer@robbinsaarroyo.com
jrabutaso@robbinsarroyo.com

**THE PASKOWITZ LAW FIRM, P.C.**
Laurence D. Paskowitz
208 East 51st Street, Suite 380
New York, New York 10022
Telephone: (212) 685-0969
Facsimile: (212) 685-2306
lpaskowitz@pasklaw.com

**Co-Lead Counsel for Plaintiffs**

–and–

**LASKY & RIFKIND, LTD**.
Norman Rifkind
Leigh Lasky
Amelia S. Newton
351 West Hubbard Street, Suite 401
Chicago, IL  60654
Telephone: (312) 634-0057
Facsimile: (312) 634-0059
rifkind@laskyrifkind.com
newton@laskyrifkind.com

**THE LAW OFFICES OF EDWARD T.
 JOYCE & ASSOCIATES, P.C.**
Edward T. Joyce
Rowena T. Parma
135 South LaSalle Street
Suite 2200
Chicago, IL 60603
Telephone: (312) 641-2600
Facsimile: (312) 641-0360
rparma@joycelaw.com

**Co-Liaison Counsel for Plaintiffs**

**Additional Counsel:**

**THE GRANT LAW FIRM, PLLC**
Lynda Grant
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (212) 292-4441
Facsimile: (212) 292-4442

lgrant@grantfirm.com

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs
60 East 42nd Street
46th Floor
New York, New York 10165
Telephone: (212) 867-1156
Facsimile:  (212) 504-8343
jacobs@jacobsclasslaw.com

**Additional Counsel for Plaintiff Lori
Ravenscroft Geare**

**LAW OFFICE OF ALFRED
    G. YATES, JR., P.C.**
Alfred G. Yates, Jr.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: (412) 391-5164
Facsimile: (412) 471-1033
yateslaw@aol.com

**Additional Counsel for Plaintiff Robert J.
Casey**

998635

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-

mail addresses denoted on the Electronic Mail Notice List.

*/s/ George C. Aguilar*
GEORGE C. AGUILAR
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsarroyo.com